## STATE OF NEBRASKA, EX REL. BOARD OF EDUCATIONAL LANDS AND FUNDS, v. WILLIAM STUEFER, TREASURER.

FILED NOVEMBER 19, 1902.   No. 13,004.

Commissioner's opinion, Department No. 1.

**Permanent Fund:** INVESTMENT: BONDS OF OTHER STATES. Section 9 of article 8 of the constitution of Nebraska, does not forbid the investment of the permanent school fund of this state in the duly issued bonds of other states.

ORIGINAL application, on the relation of the board of educational lands and funds, for a writ of mandamus against William Stuefer, as state treasurer, commanding him to comply with a certain order of the relator directing the investment of money belonging to the permanent school fund, not exceeding the sum of $300,000, in bonds of the state of Massachusetts, at such rate of interest as will net the said permanent school fund three per cent. per annum. The respondent filed an answer which was, in legal effect, a general demurrer to the relator's application. So the question before the court was simply a construction of the constitution. *Writ allowed.*

*Frank N. Prout, Attorney General,* for the relator, filed no brief, but made an oral argument.

*William Stuefer,* for himself, filed no brief and made no argument.

COMMISSIONERS' OPINION, DEPARTMENT NO. 1.

This is an application by the state board of educational lands and funds for a peremptory writ of mandamus to compel the state treasurer to comply with an order of the relator directing him to invest certain moneys in his hands, belonging to the permanent school fund of the state, in bonds of the state of Massachusetts, to run not less than thirty nor more than forty years, and yielding to the investor an interest rate of three per cent. per annum, payable semi-annually.

The only question here involved is the construction of section 9, article 8, of the state constitution, which provides as follows: "All funds belonging to the state for educational purposes, the interest and income whereof only are to be used, shall be deemed trust funds held by the state, and the state shall supply all losses thereof, that may in any manner accrue, so that the same shall remain forever inviolate and undiminished. And shall not be invested or loaned except on United States or state securities, or registered county bonds of this state; and such funds, with the interest and income thereof, are hereby solemnly pledged for the purposes for which they are granted and set apart, and shall not be transferred to any other fund for other uses." The respondent, in his answer, denied that the foregoing provision, or any other constitutional or statutory provision, authorizes the investment ordered by the board, and relied upon the construction that the words "state securities," as used in the section, included only securities of this state. It seems to us that the phraseology of the section quoted clearly requires a broader construction. By the use of the words, "county bonds of this state," the framers of the constitution clearly

expressed themselves as excluding county bonds of any other state, and had they intended the same restriction to apply to the state bonds or securities of other states, it seems clear that they would have similarly so indicated. The application of the restrictive clause to one class of securities and its absence from the other appears to be so significant as to leave no room for any other construction. Aside from the phraseology of the section, its purpose and policy would seem to strengthen this conclusion. The exclusion of county bonds of other states from the category of permissible investments for the permanent school fund was, doubtless, inspired by the experience of other investors with securities of that class which, in too many cases, have proved unsafe. The same can not be said of state bonds where the credit of the entire commonwealth is pledged for their redemption, and there is nothing to indicate that the members of the convention had reason to suppose that the state bonds, or securities of other states, would be a less desirable form of investment, as a whole, than those of this state. The language and object of the provision, therefore, indicate that it was not the intention of the constitution's framers to forbid such investment in the bonds of other states. But if the question were a doubtful one, we would be inclined to resort to the argument *"ab inconvenienti."* This argument seems to have been given much weight in the case of *In re State Warrants,* 25 Nebr., 659. In that decision the provision that the state shall make good any loss to the fund was held to make the state a guarantor, under the constitution, of any warrant that might be purchased, so that the credit of the state was constitutionally pledged, in any event, and there could be no doubt that a warrant of this state, when purchased, would be a "state security." We are by no means clear that a mere evidence of indebtedness, such as a state warrant of another state, would be such a "state security" as the constitution contemplates, but have no doubt that a state bond, which in due form and by its lawful execution, pledges the credit of the commonwealth,

is a "state security." From information furnished by the state treasurer, we learn that the amount of the permanent school fund is now $5,246,182.46, and the indications are that this amount will increase rather than diminish. On the other hand, the state securities or bonds of this state, because of the limitation imposed by section 1 of article 12 of the constitution, can never exceed, under ordinary circumstances, the sum of $100,000. It is plain that this would afford a very limited outlet for investment of the fund. It could hardly have been intended by the framers of the constitution, who prepared and adopted both of these provisions, that investment in the securities of other states should not be within this limit. In reaching this conclusion, we do not pass upon the advisability of the investment ordered by the board. Over that question we have, of course, no jurisdiction at least in this case. The responsibility of that rests with the board. We have intended simply to express our opinion that the action taken was not forbidden by the state constitution, and that the treasurer is not warranted in refusing to comply with the order on that ground. It is therefore recommended that the writ be allowed.

C. S. LOBINGIER,
J. S. KIRKPATRICK,
W. G. HASTINGS,
*Commissioners.*

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the writ be allowed.

WRIT ALLOWED.

NOTE.—The foregoing is an epoch-making case in the history of the state. The practice, till the filing of this opinion, had been never to invest the permanent school fund in the bonds of any other state. —W. F. B.